# In the United States Court of Federal Claims

<table>
<tr><td>

SQUARE ONE ARMORING SERVICES
COMPANY,

                    Plaintiff,

             v.

THE UNITED STATES,

                    Defendant.

</td><td>

Nos. 16-cv-0124; 16-cv-0263;
21-cv-2002

Filed: September 22, 2022

</td></tr>
</table>

*David J. Habib, Jr.*, Law Office of David J. Habib, Westlake Village, California for Plaintiff.

*James W. Poirier*, United States Department of Justice, Civil Division, Commercial Litigation, Washington, District of Columbia for Defendant.  With him on the briefs are *Brian M. Boynton*, Principal Deputy Assistant Attorney General, Civil Division; *Patricia M. McCarthy*, Director, Commercial Litigation Branch; *Franklin E. White, Jr.*, Assistant Director, Commercial Litigation Branch; and *Daniel A. Hoffman*, Trial Attorney, Commercial Litigation Branch.

## MEMORANDUM AND ORDER

On August 8, 2007, Defendant United States (Defendant or Government) issued indefinite delivery/indefinite quantity (IDIQ) Contract No. SAQMMA07D0004 (Contract) to Plaintiff Square One Armoring Services Company (Plaintiff or Square One) for armoring services and vehicles used by U.S. military personnel and dignitaries.  Appendix to Defendant's Motion for Partial Summary Judgment Based Upon the Statute of Limitations (ECF Nos. 208-1 – 208-5) (Def.'s App.) at A30-A102 (Contract); *Square One Armoring Servs. Co. v. United States*, 152 Fed. Cl. 536, 540 (2021).  Count I of Plaintiff's Third Amended Complaint (ECF No. 52) (Third Am. Compl.) for Breach of Contract/Constructive Change Orders alleges that Defendant "changed the Contract by its directives ordering goods and services beyond the scope of the Contract."  Third

Am. Compl. ¶¶ 26-34.  Plaintiff identifies 21 constructive change orders (CCOs) for which it seeks

damages.  *Id.* ¶¶ 21, 25.

Pending before the Court is Defendant's Motion for Partial Summary Judgment Based

Upon the Statute of Limitations, which seeks dismissal of Plaintiff's claims with respect to eight

of those CCOs.[1]  Defendant's Motion for Partial Summary Judgment Based Upon the Statute of

Limitations (ECF No. 208) (Mot.) at 7.[2]  The parties completed briefing on Defendant's Motion

on June 10, 2022, and this Court held oral argument on July 29, 2022.  Plaintiff's Response to

Defendant's Motion for Partial Summary Judgment Based Upon the Statute of Limitations (ECF

No. 213) (Resp.); Defendant's Reply in Support of Defendant's Motion for Partial Summary

Judgment Based Upon the Statute of Limitations (ECF No. 222) (Reply); Plaintiff's Sur Reply to

Defendant's Reply in Support of Defendant's Motion for Partial Summary Judgment Based on the

Statute of Limitations (ECF No. 226) (Sur Reply); Transcript of Oral Argument, dated July 29,

2022 (ECF No. 231) (Tr.).

It is undisputed that Defendant's contracting officer received Plaintiff's eight CCO claims

relevant to this Motion on October 9, 2014.  Mot. at 7; Complaint (ECF No. 1) (Compl.) ¶ 4.  The

parties also agree that October 9, 2008 is the relevant date for purposes of determining whether

Plaintiff's eight CCO claims meet the relevant statute of limitations.  Mot. at 7; Resp. at 9; Tr. at

99:12-23.  Defendant argues that Plaintiff's CCO claims must be dismissed because they each

---

[1] The eight CCOs at issue in Defendant's Motion are: CCO No. 2 (welding), CCO No. 3 (flat armor door panels), CCO No. 4 (straps on windshields and the rear windows of sedans), CCO No. 6 (re-enforced B pillars), CCO No. 9 (armoring two vehicles in 2008 for blast testing); CCO No. 10 (level D swing door glass), CCO No. 11 (replacement door handles for Cadillacs), and CCO No. 12 (rear window map lights for Cadillacs).  Mot. at 7; *see also* Third Am. Compl. ¶ 21.

[2] Citations throughout this Memorandum and Order reference the ECF-assigned page numbers, which do not always correspond to the pagination within the document.

accrued prior to October 9, 2008 and thus fall outside the 6-year statute of limitations mandated by 41 U.S.C. § 7103(a)(4)(A).[3] *Id.* (citing Compl. ¶ 4). Plaintiff disagrees and argues that its eight CCO claims did not accrue until after it had completed designing and testing the modified features requested by the Government, which would have occurred after October 9, 2008. Resp. at 9-10. Thus, Plaintiff argues, it timely submitted the eight CCO claims at issue in Defendant's Motion. *Id.*

Defendant's Motion presents two issues for this Court's consideration: (i) when, as a matter of law, a CCO claim accrues, and (ii) considering when each CCO claim accrued, whether Plaintiff timely submitted its claims consistent with the statute of limitations. *See generally* Mot. For the reasons described below, this Court holds that a CCO claim accrues when a contractor receives instructions from the Government to perform work outside the scope of a contract. As this Court finds that Square One received instructions prior to October 9, 2008 to perform work outside the scope of the Contract for six of the eight CCOs at issue, this Court **GRANTS** Defendant's Motion for Partial Summary Judgment Based Upon the Statute of Limitations (ECF No. 208) with respect to CCO Claim Nos. 2, 3, 4, 10, 11, and 12. The Court **DENIES** Defendant's Motion relative to Claim Nos. 6 and 9, which involve questions of fact to be resolved at trial.

---

[3] There are two elements for a constructive change order claim: "(1) [a contractor] performed work beyond the contract requirements, and (2) . . . the additional work was ordered, expressly or impliedly, by the government." *Bell/Heery v. United States*, 739 F.3d 1324, 1335 (Fed. Cir. 2014). For purposes of the current Motion only, Defendant does not contest whether the eight CCO claims at issue here meet that two-pronged test. Mot. at 31. Instead, Defendant's Motion focuses solely on whether the claims are barred by the statute of limitations. *See* Mot. at 8-9; *see also* Tr. at 104:22-25 ("But in any event, we don't have to get to those [substantive CCO claim] issues today. All we're saying is, look, it's more than six years, so it's barred by the statute of limitations.").

BACKGROUND

This action has a lengthy litigation history, familiarity with which is presumed.  *See, e.g.*, *Square One Armoring Servs. Co. v. United States*, 152 Fed. Cl. 536 (2021).  A brief background pertinent to the current Motion follows.

The Contract at issue required Square One to provide armored vehicles to the United States Department of State (State Department) consistent with particular specifications.  *See* Def.'s App. at A30-A102.  Prior to the Contract's issuance in 2007, and up until at least 2013, the Government conducted "blast testing" on armored vehicles to determine whether the vehicles could withstand certain explosions.  *See, e.g.*, Appendix to Plaintiff's Response to Defendant's Motion for Partial Summary Judgment Based Upon the Statute of Limitations (ECF No. 213-1) (Pl.'s App.) at 55-56 (deposition testimony of State Department contracting officer representative Rick Motley confirming that "blast testing" continued through 2013).  Based on those blast test results and other considerations, including the need "to mitigate substantial, unspecified blast threats in the field," Plaintiff alleges that between August 2007 and September 2014, Defendant requested that Square One "increase the capabilities of the armor systems for the vehicles" beyond the Contract's specifications.  Third Am. Compl. ¶¶ 15, 43.  Square One further alleges that it complied with those requests by armoring and delivering vehicles to the State Department based on the Government's desired changes and by performing its own blast tests not specified in the Contract.  *Id.* ¶¶ 44-45.  For purposes of this Motion, Defendant does not contest that (i) Defendant ordered Plaintiff to perform work beyond the scope of the Contract, and (ii) Plaintiff complied in doing so.  Mot. at 31; *see also* Tr. at 104:22-25 (clarifying that Motion only addresses statute of limitations).

On October 9, 2014, Defendant's contracting officer received 18 CCO claims submitted by Plaintiff, which sought "$17,756,971.75 to cover added costs and appropriate compensation in

respect of the additional work [P]laintiff performed." Third Am. Compl. ¶ 8.  The contracting

officer denied the claims on May 1, 2015.[4]  *Id.*  Plaintiff timely appealed the denials to the U.S.

Court of Federal Claims on January 27, 2016.  *See* Compl.

<u>APPLICABLE LEGAL STANDARD</u>

A court may grant summary judgment if the pleadings, affidavits, and evidentiary materials

filed in a case reveal "there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law" as to a particular "claim or defense."  Rules of the United States

Court of Federal Claims (Rules) 56(a).  The moving party bears the initial burden to demonstrate

the absence of any genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986).  A genuine factual dispute exists when "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248

(1986).  A party seeking to establish a genuine dispute of material fact must "cit[e] to particular

parts of materials in the record, including depositions, documents, electronically stored

information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other

materials."  Rule 56(c)(1)(A).

While "the inferences to be drawn from the underlying facts . . . must be viewed in the light

most favorable to the party opposing the motion," summary judgment may still be granted when

the party opposing the motion submits evidence that "is merely colorable . . . or is not significantly

probative."  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Anderson*, 477 U.S. at 249

(internal citation omitted).  Summary judgment is especially appropriate when "the only disputed

issues [are] issues of law."  *Dana Corp. v. United States*, 174 F.3d 1344, 1347 (Fed. Cir. 1999).

---

[4] On March 3, 2017, Plaintiff submitted three additional CCO claims to Defendant's contracting officer — not at issue in Defendant's Motion — seeking an additional $1,279,841.88, which the contracting officer denied on November 21, 2017.  Third Am. Compl. ¶ 25.

The court may only grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

<u>DISCUSSION</u>

The Contract Disputes Act (CDA) requires that "[e]ach claim by a contractor against the Federal Government relating to a contract . . . shall be submitted within 6 years after the accrual of the claim." 41 U.S.C. § 7103(a)(4)(A). The Federal Acquisition Regulation (FAR) defines "accrual of a claim" as follows:

> [T]he date when all events, that fix the alleged liability of either the Government or the contractor and permit assertion of the claim, were known or should have been known. For liability to be fixed, some injury must have occurred. However, monetary damages need not have been incurred.

48 C.F.R. § 33.201.

Defendant argues it is entitled to summary judgment on eight of Plaintiff's CCO claims, as they allegedly each accrued before October 9, 2008, and thus do not fall within 41 U.S.C. § 7103(a)(4)(A)'s six-year statute of limitations. Mot. at 7. In contrast, Plaintiff contends that these claims each accrued after October 9, 2008, and are therefore timely. Resp. at 9-10.

As a threshold matter, this Court must determine what constitutes "accrual" of a CCO claim for purposes of a statute of limitation analysis under 41 U.S.C. § 7103. Next, this Court must assess whether the eight CCOs at issue each "accrued" before or after October 9, 2008 to determine whether Plaintiff timely submitted the claims.[5] As explained further below, this Court holds that

---

[5] While Plaintiff requests this Court consider these eight CCO claims as part of one integrated armoring system, Plaintiff opted to file 21 separate CCO claims — rather than a single CCO claim — before the contracting officer, evincing an acknowledgement of the claims' independent nature. *See* Tr. at 114:7-14 ("The State Department didn't ask Square One for welds. It didn't ask Square

(i) a CCO claim accrues when a contractor receives instructions from the Government to perform work outside the scope of the contract, and (ii) there is no genuine dispute of material fact that Square One received such notice before October 9, 2008 for six of the eight CCO claims at issue in Defendant's Motion. *See Alpek Polyester, S.A. de C.V. v. Polymetrix AG*, No. 2021-1706, 2021 WL 5974163, at *5 (Fed. Cir. Dec. 16, 2021) ("But the summary judgment standard requires a *genuine* dispute about a material fact.") (emphasis in original). Accordingly, summary judgment on those six CCO claims is warranted. As genuine disputes of material fact exist concerning the timing of the Government's instruction to Square One for two of the CCO claims, the Court denies summary judgment on those claims and must instead resolve those disputed issues at trial.[6]

I.   <u>Constructive Change Order Claims Accrue When a Contractor Receives Instructions from the Government to Perform Work Outside the Scope of the Contract</u>

Defendant asserts that CCO claims accrue when a contractor "should have known that they had a scope of the contract issue, and when *some* [monetary] injury occurred." Tr. at 103:7-21

---

One for a flat armor door panel. It didn't ask Square One for windshield retention straps. It didn't ask Square One for a blast shield. It asked Square One for an armoring system, an integrated armoring system that won't come apart in a blast. That means every component of that system is dependent on the other one."). Plaintiff's rationale for filing individual claims — "so that the contracting officer that was reviewing the [request for equitable adjustment] would have enough detail to determine what each of these components were and why there was a cost associated with them" — does not explain why Square One could not have included that same level of granularity in a single claim. *Id.* at 117:22-118:1. By filing its CCO claims separately, Plaintiff clearly believed the claims were distinct and independent, and thus this Court will follow suit and assess Plaintiff's CCO claims as they were presented to the contracting officer: as individual, independent CCO claims.

[6] The U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has clarified that meeting the statute of limitations under the CDA is not a jurisdictional requirement. *Kellogg Brown & Root Servs., Inc. v. Murphy*, 823 F.3d 622, 630 (Fed. Cir. 2016). Accordingly, any claims upon which there is a genuine dispute of material fact concerning the appropriate accrual date must be resolved at trial. *See, e.g., Pond Sec. Servs., GmbH v. United States*, No. 17-1736C, 2021 WL 2452142, at *11 (Fed. Cl. May 28, 2021) (denying in part parties' cross-motions for summary judgment, where a genuine dispute of material fact necessary to determine accrual of the claim existed concerning "the agency's knowledge").

(emphasis added); Reply at 18-22.  In contrast, Plaintiff contends that CCO claims do not accrue until a later date, when a contractor knows the "sum certain" it would seek from the agency.  Resp. at 17 (quoting *Kellogg Brown & Root Servs., Inc. v. Murphy*, 823 F.3d 622, 628 (Fed. Cir. 2016)). Specifically, under Defendant's approach, Plaintiff's CCO claims accrued as soon as Defendant directed Square One to perform work outside the scope of the Contract.   Under Plaintiff's approach, the CCO claims only accrued once Square One had completed blast testing and received the modified work orders from the State Department, not when Defendant first requested Square One to perform work outside of the Contract's specifications.  *Compare* Tr. at 103:7-21, *with id.* at 119:19-24 ("We couldn't have known what the claim might be for those elements until we . . . analyzed[d] the results of the blast test to see what . . . happened here.").

To determine when a claim accrues, the Court examines "the FAR, the conditions of the contract, and the facts of the particular case."  *Kellogg Brown*, 823 F.3d at 626.  Indeed, as neither party references any conditions for accrual required by the Contract, the Court must look to the FAR, binding precedent, and the facts presented to resolve the present Motion.  *See generally* Mot.; Resp.

## A.  The "Sum Certain" Requirement Does Not Apply to Claim Accrual

Contrary to Plaintiff's position, there is not a "sum certain" requirement applicable to the claim accrual analysis.  Plaintiff grounds its "sum certain" argument on *dicta* from the U.S. Court of Appeals for the Federal Circuit's (Federal Circuit's) decision in *Kellogg Brown & Root Servs., Inc. v. Murphy*, 823 F.3d 622 (Fed. Cir. 2016).  Resp. at 17.  In *Kellogg Brown*, the plaintiff appealed a ruling of the Armed Services Board of Contract Appeals (Board) that had dismissed plaintiff's CDA claim as time barred.  *Kellogg Brown*, 823 F.3d at 625.  The Federal Circuit

reversed and remanded, holding that the contract at issue required that the plaintiff exhaust its administrative remedies before the claim could accrue.  *Id.* at 628-30.

In *dicta*, the Federal Circuit opined that "[a]ccrual in accordance with FAR § 33.201 does not occur until [plaintiff] requests, or reasonably could have requested, a sum certain from the government."  *Kellogg Brown*, 823 F.3d at 628.  However, *dicta* is not binding authority, and, even so, this Court is unpersuaded that such reasoning is applicable here.  *Co-Steel Raritan, Inc. v. Int'l Trade Comm'n.*, 357 F.3d 1294, 1307 (Fed. Cir. 2004) ("Because statements made in dicta do not implicate the substantive holding of the case, they cannot be considered binding authority.") (internal quotations omitted).  First, the referenced sentence concerning applicability of a "sum certain" requirement for claim accrual is clearly *dicta*, as it was immaterial to the Federal Circuit's holding that the plaintiff failed to exhaust its pre-claim contractual administrative procedures.  *Id.*; *see also Elec. Boat Corp. v. Sec'y of Navy*, 958 F.3d 1372, 1376 (Fed. Cir. 2020) (explaining central holding of *Kellogg Brown* concerned plaintiff's failure to resolve "cost disputes with the subcontractor as required by the contract" prior to filing its claim).  As the Federal Circuit remanded to the Board to make factual findings and assess the merits of plaintiff's claim, the court did not apply a "sum certain" requirement; indeed, the facts necessary to apply such a requirement were not yet established.  *Kellogg Brown*, 823 F.3d at 625.

Second, this Court is unconvinced that a "sum certain" requirement applies for determining claim accrual.  While the Federal Circuit's *dicta* in *Kellogg Brown* implied that a "sum certain" requirement stems from FAR § 33.201's definition of "accrual of a claim," that FAR provision makes no mention of a "sum certain" condition.  *See* FAR § 33.201.  Rather, a "sum certain" requirement appears in a *different* FAR provision, defining the requirements for a "claim" submitted to a contracting officer.  FAR § 2.101 ("Claim means a written demand or written

assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract.").  In fact, the Federal Circuit in *Kellogg Brown* agreed — albeit again in *dicta* — that FAR § 33.201 (the definition for "accrual of a claim") rather than FAR § 2.101 (the definition for presenting a "claim" before a contracting officer) is the applicable regulation for determining whether the statute of limitations had run.  *Kellogg Brown*, 823 F.3d at 627-28.  More recently, the Federal Circuit in *Electric Boat Corp. v. Secretary of Navy* confirmed that FAR § 33.201 provides the correct standard for determining claim accrual.[7]  958 F.3d at 1375-76 (applying FAR § 33.201's standard to determine whether the statute of limitations for filing the claim had expired).  Accordingly, this Court finds no rationale for imparting FAR § 2.101's "sum certain" requirement to the present context of analyzing claim accrual under 41 U.S.C. § 7103(a)(4)(A) and FAR § 33.201.[8]

---

[7] In a footnote, the Federal Circuit noted that it would not address whether a "sum certain" requirement applied for determining claim accrual, as plaintiff had waived that argument; it also made no indication of whether the *dicta* from *Kellogg Brown* was binding on the court.  *Elec. Boat Corp.*, 958 F.3d at 1378 n.4.

[8] There is no tension in interpretating the regulations such that "claim accrual" could occur prior to when a contractor could permissibly file a "claim" with a contracting officer.  *Compare* FAR § 33.201, *with* FAR § 2.101.  As Defendant accurately notes, the purpose of "claim accrual" is "to measure the time permitted for the contractor to prepare and submit its written claim to the contracting officer."  Reply at 21.  Accordingly, it is reasonable that the requirements for triggering "claim accrual" would be different from the requirements for later filing a "claim" with a contracting officer, as the latter is based on the former.  *See Vazquez-Claudio v. Shinseki*, 713 F.3d 112, 115 (Fed. Cir. 2013) ("In construing regulatory language, we must read the disputed language in the context of the entire regulation as well as other related regulatory sections in order to determine the language's plain meaning."); *Suwannee River Fin., Inc. v. United States*, 7 Cl. Ct. 556, 560 (1985) ("It is axiomatic that regulations must be interpreted to give meaning to every word, particularly where doing so leads to an entirely sensible interpretation of the provision in question.").

      B.   <u>Even If a "Sum Certain" Requirement Applied, a Claim Would Still Accrue Before a Plaintiff Has Knowledge of All Costs or Damages</u>

Even if this Court were persuaded by the *dicta* in *Kellogg Brown* — which it is not — nothing in *Kellogg Brown* disturbs the Federal Circuit's precedent in *H.L. Smith, Inc. v. Dalton* that a "sum certain" can be an estimate rather than a final sum, as Plaintiff advocates here. *See H.L. Smith, Inc. v. Dalton*, 49 F.3d 1563, 1565 (Fed. Cir. 1995) (explaining that no financial data or a "detailed breakdown of costs" need be submitted to meet the "sum certain" requirement). Rather, the "sum certain" requirement merely demands that the contractor provide some basis for its costs in its claim submission to a contracting officer. *Id.* This understanding of the "sum certain" requirement comports with courts permitting contractors to amend their original claim to reflect cost increases, rather than instructing them to file a new claim. *See, e.g.*, *Modeer v. United States*, 68 Fed. Cl. 131, 137 (2005), *aff'd*, 183 F. App'x 975 (Fed. Cir. 2006) (permitting plaintiff to increase the dollar value of its claim where its new proposed damages (i) arose out of the same operative facts as the original claim, and (ii) could not have been known to plaintiff when it filed the original claim). Indeed, if "sum certain" meant knowledge of all costs, a plaintiff would be required to file a new claim each time their costs changed. This is not so. *See* FAR § 33.201; *Elec. Boat Corp.*, 958 F.3d at 1377 (proceeding with single claim despite new costs incurred). Thus, regardless of whether a "sum certain" requirement applies in the context of determining claim accrual, it is clear that the statute of limitations begins running prior to a contractor having knowledge of the full extent of its costs. *See Elec. Boat Corp.*, 958 F.3d at 1377 (holding plaintiff "was not required to incur actual costs for each submarine" before the claim accrued).

C.  FAR § 33.201's "All Events" and "Fixed" Liability Terms Do Not Require a
Plaintiff to Have Knowledge of All Costs Prior to Accrual

Plaintiff nevertheless argues that this Court should construe FAR § 33.201's "all events"

and "fix[ed]" liability language to delay "accrual" until Square One had knowledge of *all* costs it

would incur from the CCOs (*i.e.*, until after it had "analyze[d] the results of the blast test[s]").

Resp. at 16-18; Sur Reply at 1-2; Tr. at 119:19-24.  This argument is similarly unavailing.

After examining the plain language of section 33.201, this Court declines to adopt

Plaintiff's preferred interpretation. *See Lockheed Corp. v. Widnall*, 113 F.3d 1225, 1227 (Fed. Cir.

1997) ("To interpret a regulation we must look at its plain language and consider the terms in

accordance with their common meaning.").  Significantly, Plaintiff's interpretation wholly ignores

the second half of section 33.201, which states that "*some* injury must have occurred" for liability

to attach.  FAR § 33.201 (emphasis added).  As courts "must read the disputed [regulatory]

language in the context of the *entire* regulation" to discern its plain meaning, this Court must

consider the first half of section 33.201 such that it does not render the second half inoperative or

meaningless.  *Vazquez-Claudio v. Shinseki*, 713 F.3d 112, 115 (Fed. Cir. 2013) (emphasis added).

By its own terms, the second half of section 33.201 defines the "fix[ed]" liability language

contained in the first half of the regulation as requiring "*some* injury" — and not all injury — to

have occurred.  FAR § 33.201 (emphasis added).  This language indicates that a plaintiff need not

know the full extent of its costs or damages for its claim to accrue.  *Id.*  Further, as noted, it would

be inconsistent to interpret section 33.201's "all events" language as requiring a plaintiff to know

all of its damages prior to accrual given the second half of the regulation explicitly instructs that

only "*some* injury must have occurred." *Id.* (emphasis added).   Accordingly, a better reading of

"all events" language is that accrual occurs when a plaintiff has been put on notice that it will incur

*some* injury, even if the full extent of its injury or damages only becomes clear later.  *Id.*  In this

12

case, those "events" would "fix" when Square One was instructed to perform work beyond the Contract's specifications. Accordingly, based on the plain language of section 33.201, Plaintiff's CCO claims would have accrued at that juncture.

This interpretation of FAR § 33.201 is consistent with the Federal Circuit's holding in *Electric Boat Corp. v. Secretary of the Navy*. In *Electric Boat Corp.*, implementation of new Occupational Safety and Health Administration (OSHA) regulations raised production costs for the plaintiff, which had already contracted with the Navy to provide up to six submarines. 958 F.3d at 1375. While the plaintiff argued that its claim for an equitable price adjustment did not accrue until the Navy had informed plaintiff that it would "not adjust the contract price" based on the new OSHA regulations, the Federal Circuit disagreed and held that the plaintiff's claim accrued *before* plaintiff had incurred damages for construction of all submarines requested by the Navy. *Id.* at 1375-77. The Federal Circuit reasoned that as the underlying facts giving rise to liability — namely the implementation of the OSHA regulations — were known to the plaintiff at the time of the regulations' issuance, the claim accrued then, despite that the plaintiff did not know its total damages at that time. *Id.* at 1376-78.

Finally, Plaintiff cites three cases to support its theory of accrual; each is inapposite. *See* Resp. at 16-18 (citing *Oceanic S.S. Co. v. United States*, 165 Ct. Cl. 217 (1964); *Kirby v. United States*, 201 Ct. Cl. 527 (1973); and *Appeal of Gray Personnel, Inc.*, ASBCA No. 54562, 06-2 BCA 33378, 2006 WL 2390292 (ASBCA Aug. 9, 2006)). First, *Oceanic* concerned interpreting accrual in the context of a mandatory administrative provision contained in a contract, which is not at issue in the present case. *Oceanic S.S. Co.*, 165 Ct. Cl. at 225-31. Second, *Kirby* is readily distinguishable, as it involves a statutory claim for military back pay entirely distinct from Plaintiff's non-statutory CCO claims. *Kirby*, 201 Ct. Cl. at 530. Third, Plaintiff relies on a

decision by an administrative judge of the Board in *Appeal of Gray Personnel, Inc.*, ASBCA No. 54562, 06-2 BCA 33378, 2006 WL 2390292 (ASBCA Aug. 9, 2006) (*Gray*); that decision is similarly unrelated to the present action.  Resp. at 18.  Even if this Court were to consider *Gray*, which is not precedential authority, the Board similarly interpreted FAR § 33.201, noting that a plaintiff was not required to have incurred all of its damages prior to accrual.  *Id.*  To support its position, Plaintiff briefly references another part of the *Gray* decision separate from the Board's interpretation of section 33.201, that applies the "continuing claim doctrine" to extend the date of accrual.  Resp. at 18 (citing *Gray*, at p. 14).  However, Plaintiff fails to identify or even argue how that doctrine would apply here, where Plaintiff's "claim is based upon a single distinct event" (*i.e.*, instructions to perform work beyond the scope of the Contract).  *Id.*; *see also Wells v. United States*, 420 F.3d 1343, 1347 (Fed. Cir. 2005) (defining "continuing claim" as one where "each alleged wrong constituted an alleged violation of a statute or regulation that accrued when that particular wrong occurred, independent of the accrual of other wrongs") (internal quotations omitted).  Thus, these cases do not disturb this Court's and the Federal Circuit's interpretations of section 33.201, which do not to require knowledge of all damages at the time of claim accrual.

As knowledge of *all* damages is not a prerequisite, this Court holds that the proper inquiry to determine accrual of a CCO claim requires analysis of when the contractor received instructions from the Government to perform work outside the scope of the contract; at that point a plaintiff is on notice of the potential claim and the claim accrues.[9]  *See Bell/Heery*, 739 F.3d at 1335

---

[9]  Plaintiff's tardy effort to impart the Federal Circuit's "strictly and narrowly applied" accrual suspension rule to this case also fails.  *See* Sur Reply at 7 (citing *Brizuela v. United States*, 492 F. App'x 97, 99-100 (Fed. Cir. 2012)).  For the first time in its Sur Reply, Plaintiff contended that the accrual suspension rule should apply here because Plaintiff's "injury was clearly unknowable on October 8, 2008, and for months thereafter."  Sur Reply at 7.  First, Plaintiff waived this argument by failing to raise it in its Response.  *Sarro & Assocs., Inc. v. United States*, 152 Fed. Cl. 44, 58-59 (2021) ("A party's failure to raise an argument in an opening or responsive brief

(describing two pronged analysis: (1) performance of work beyond the contract scope (2) that the government ordered).

II.   Timeliness of Plaintiff's Claims for Constructive Change Orders

To determine whether Defendant is entitled to summary judgment, the Court must evaluate *when* the Government instructed Square One to perform the work described in the eight CCOs.  If that date is before October 9, 2008, the CCO claim is barred by the statute of limitations and summary judgment on the claim is warranted.  Alternatively, if that date is on or after October 9, 2008, or if genuine issues of material fact exist concerning the accrual date, summary judgment on the claim is inappropriate.  Each CCO claim is addressed in turn.

A.   CCO Claim No. 2: Additional Welding on Perimeter Door Flat Armor Panels

Plaintiff's CCO claim for additional welding and door flat armor panels (CCO Claim No. 2) is untimely.  Both parties agree that CCO Claim No. 2 involves incorporating one inch welds every two inches into the armoring.  Mot. at 21; Resp. at 12.  The undisputed evidence presented by Defendant reflects that the Government instructed Square One to apply one inch welds every two inches before October 9, 2008.  Def.'s App. at A160, 178-79, 210-13; *see* Mot. at 21-22.

---

constitutes waiver.").  This Court finds no basis for Plaintiff's omission of this argument from its Response.

Second, even if this Court were to consider this waived argument on its merits, Plaintiff would still fail to establish that the "strictly and narrowly applied" accrual suspension rule applies to its claims.  *See* Sur Reply at 7; *Brizuela*, 492 F. App'x at 99.  Under the accrual suspension rule, a plaintiff must demonstrate either (1) "that defendant has concealed its acts with the result that plaintiff was unaware of their existence," or (2) "that [the plaintiff's] injury was inherently unknowable at the accrual date."  *Brizuela*, 492 F. at 99 (quoting *Martinez v. United States*, 333 F.3d 1295, 1319 (Fed. Cir. 2003)).  Plaintiff provides no rationale concerning how it was "inherently unknowable" that it would incur damages after Defendant had instructed it to make armoring changes allegedly beyond the Contract specifications.  *See* Sur Reply at 7.  Plaintiff's argument is not that Defendant's directions were unknowable, but rather that Plaintiff's total damages were unknowable.  *See* Sur Reply at 6-7.  Accordingly, the narrow accrual suspension rule is inapplicable to Plaintiff's claims.

Significantly, the new welding requirement is mentioned twice in Square One manager Mr. Julio Cardenal's contemporaneous, handwritten notes from a September 5, 2007 meeting attended by State Department inspector Mr. Walter Romanko and Square One employees Mr. Javier Cardenal (president at that time), Mr. Julio Cardenal (engineering manager at the time), Mr. Martin Cardenal (U.S. government programs director), and Mr. Nicholas Terhaar (production manager at the time). Def.'s App. at A178-79; *see also* Compl. ¶¶ 16, 21. Notably, Plaintiff's 2016 Complaint also acknowledges that Mr. Romanko "requested" the new "welding requirements" during that September 5, 2007 meeting with Square One personnel. Compl. ¶¶ 16, 21 ("This instruction resulted in CCO 002 Additional Welding.").

In fact, during his deposition, Square One's engineer, Mr. Emilio Perez, testified that the "one inch welds every two inches" requirement already was "common practice" when he began working at Square One in October 2005. Def.'s App. at A160. Such practice is confirmed by a 2013 letter from Square One to the U.S. Attorney's Office for the Southern District of Florida, in which Square One noted that "significant modifications to the armored vehicles between 2005-2007" included transitioning "to 1 inch of stich weld spaced every 2 inches." *Id.* at A210-13. Thus, the evidence presented by Defendant establishes that Plaintiff was well-aware of this welding requirement by at least 2007, and perhaps as early as 2005.

Plaintiff fails to create a genuine issue of material fact concerning the date that Defendant instructed Square One to apply the allegedly new welding requirement. *See* Resp. at 12. Indeed, Plaintiff presents no evidence disputing that it was instructed on this requirement at some point between 2005 and 2007. *Id.* Instead, Plaintiff contends that the welding requirements had to change based on the results of blast testing that occurred after October 9, 2008. *Id.* However, the only evidence cited by Plaintiff in support of its contention suggests that the windshield retention

systems changed in 2010, and not that the additional welding requirement changed at that time. *Id.* at n.7 (citing Pl.'s App. at 7, 8, 16, 25).  As the undisputed record establishes that Square One had knowledge of this welding requirement before October 9, 2008, this Court grants Defendant's Motion for Summary Judgment regarding CCO Claim No. 2.

   B.   <u>CCO Claim No. 3: Flat Armor Door Panels</u>

   Plaintiff's CCO claim for flat armor door panels (CCO Claim No. 3) is untimely. Defendant presents undisputed evidence establishing that Square One knew that it needed to include such panels by September 2007 — long before October 9, 2008.  Def.'s App. at A181, 185, 199, 252; *see* Mot. at 22-24.  Defendant again references the September 5, 2007 meeting between Mr. Romanko and Square One personnel.  Mot. at 23 (citing Compl. ¶ 35).  Mr. Julio Cardenal's contemporaneous notes from that meeting memorialize an instruction from Mr. Romanko to add flat armor door paneling, an instruction which Mr. Cardenal acknowledged during his deposition.  Def.'s App. at A181 (Mr. Julio Cardenal's notes); *id.* at A199 ("I think that at this point we did talk about those [being] . . . flat armor panels during this meeting.").  In fact, flat armor door panels appeared on vehicles Square One armored in March and May 2008.  *Id.* at A185 (work order for March 7, 2008, noting inclusion of "flat door panel armor" on vehicle); *id.* at A252 (work order for May 12, 2008, noting inclusion of "flat door panel" on vehicle).  This unsurprisingly reflects the same allegations concerning CCO Claim No. 3 reflected in Plaintiff's Complaint; namely that during the meeting, Mr. Romanko told Square One that it had to perform additional work beyond the scope of the Contract.  Compl. ¶ 35.

   Plaintiff fails to establish a genuine dispute of material fact that Square One was instructed on the flat armor door panels requirement at that September 5, 2007 meeting.  At the outset, this Court notes that Plaintiff's Response pertaining to CCO No. 3 omits citation to any documentary or testimonial evidence to support its contentions and instead contains mere assertions by

Plaintiff's counsel. Resp. at 13. This Court will not consider counsel's unsupported assertions, as "[c]onclusory allegations and attorney arguments are insufficient to overcome a motion for summary judgment." *Ferring B.V. v. Barr Lab'ys, Inc.*, 437 F.3d 1181, 1193 (Fed. Cir. 2006) (citation omitted); *see* Rule 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record.").

Finally, even if this Court were to address Plaintiff's unsupported assertions on their merits, Plaintiff would still fail to establish a genuine dispute that CCO Claim No. 3 accrued in September 2007, when Plaintiff was instructed to include flat armor door panels in armored vehicles. *See* Def.'s App. at A181, 199 (evidence of September 5, 2007 instruction). Plaintiff does not contest the timing of those instructions and even concedes that it was installing armor panels prior to 2008. Resp. at 13. Instead, Plaintiff contends there is a dispute of fact because Square One was refining the designs through a series of blast tests that occurred in November 2008, February 2009, and beyond. *Id.* ("Although [P]laintiff was attempting to design and install the CCO [3] [sic] feature on vehicles prior to October 2008, the systems failed during blast testing in November 2008, February 2009, and beyond, and had to be redone.").

However, as Defendant aptly notes, Plaintiff "never submitted a separate claim for any incremental additional cost for some change to the design of the flat armor door panel after October 2008." Reply at 29. Instead, Plaintiff proceeded with its original CCO claim, which seeks damages for *all* flat armor door paneling performed, not just the changes requested after blast testing. Def.'s App. at A206 (table including damages Plaintiff seeks). As Plaintiff's CCO claim is a single claim, this Court must determine when Plaintiff was *first* ordered to perform the work detailed in CCO Claim No. 3. *See, e.g.*, *Elec. Boat Corp.*, 958 F.3d at 1377 (holding accrual based on initial orders and not tolled based on multiple components of a single claim). That date is

unequivocally September 5, 2007, based on the contemporaneous handwritten notes and deposition testimony of Mr. Julio Cardenal. *See* Def.'s App. at A181, 199. While Plaintiff's costs may have changed based on later adjustments made necessary after blast testing, those cost changes do not impact the accrual date as a matter of law. *See supra* Discussion Section I.A-B. Accordingly, as Plaintiff's CCO Claim No. 3 accrued in September 2007, prior to the October 9, 2008 accrual date, it was untimely submitted. Accordingly, this Court grants Defendant's Motion for Summary Judgment concerning CCO Claim No. 3.

C. CCO Claim No. 4: Windshield and Backlight Straps

Plaintiff's CCO claim for installing windshield and backlight straps (CCO Claim No. 4) is untimely. Defendant presents undisputed evidence that Square One was instructed to apply windshield and backlight straps before October 9, 2008, specifically sometime between September 2007 and March 2008. Mot. at 19-20; Def.'s App. at A182, 200-01. In his deposition, Mr. Cardenal confirmed that these windshield and backlight specifications were attached to vehicles for work orders printed in March 2008, evincing that the Government's instruction to add these specifications occurred prior to March 2008. Def.'s App. at A200-201 (acknowledging that Square One attached the windshield and backlight straps to the vehicle as requested); *id.* at A182 (reflecting printed work orders printed in March 2008 for vehicles armored with windshield and backlight straps).

Plaintiff does not cite any evidence, material or otherwise, that places these facts in dispute, perhaps unsurprisingly, as Plaintiff's Complaint alleges that "[b]etween September 2007 and March 2008" Mr. Romanko presented Square One with "a new windshield blast retention system" and informed Square One that the State Department would "require the windshields to be installed with retention straps that would preclude dislodgement of the windshield in the event of a blast." Compl. ¶ 36. Instead, Plaintiff merely asserts — without any evidentiary support — that the straps

Defendant requested prior to October 9, 2008 were significantly different than the straps ultimately used.  Resp. at 11-12 ("[W]indshield and backlight straps discussed or even used prior to October 8, 2008 [sic] were inadequate; they were significantly different in design, quality, and integration, than the straps ultimately required by [D]efendant.").  First, as noted, this Court will not consider counsel's unsupported, conclusory assertions.  *Ferring B.V.*, 437 F.3d at 1193; *see* Rule 56(c)(1)(A).  Second, even assuming Plaintiff could present such facts, if the changes to the straps following future blast testing stem from the initial instruction from Defendant to perform work beyond the scope of the Contract, those changes would impact Plaintiff's ultimate costs or damages rather than the accrual date.  *See supra* Discussion Section I.A-B.  As it is undisputed that Defendant instructed Plaintiff to install windshield and backlight straps between September 2007 and March 2008, Plaintiff's CCO Claim No. 4 is untimely.  Accordingly, this Court grants Defendant's Motion for Summary Judgment on CCO Claim No. 4.

   D. <u>CCO Claim No. 6: C Type Beam on Pillars and Reinforcements</u>

   Plaintiff's CCO claim for reinforced B pillars (also referenced as C type beams on pillars) (CCO Claim No. 6) involves disputes of fact, and thus must be resolved at trial.  *See, e.g.*, *Pond Sec. Servs., GmbH*, 2021 WL 2452142, at *11.  Neither party establishes when Square One was directed to add these reinforcements to their armoring jobs (*i.e.,* when the claim accrued).  *See* Mot. at 24-26; Resp. at 14.  Defendant references Plaintiff's Complaint, which states that "[w]hen the production of DOS contract vehicles began [in 2008], the [Government] requested several changes to the pillars (B, C and kick plate) designs and production process."  Mot. at 26 (quoting Compl. at 50).  However, the Complaint is not evidence that can support a motion for summary judgment, and, regardless, the Complaint does not reference a specific date on which the Government made these instructions to Square One.  Rule 56(c)(1)(A) (listing the factual bases sufficient for supporting a motion for summary judgment); Compl. at 50.  Further, Defendant fails

to present any other evidence evincing such a date.[10]  Mot. at 24-26.  Plaintiff, on the other hand, refers the Court to Mr. Julio Cardenal's deposition testimony.  Resp. at 14 (citing Pl.'s App. at 93). In response to counsel for Defendant's question "do you know when [the] request [for CCO No. 6 work] was made," Mr. Cardenal responded that "CCO [Claim No.] 6 happened after one of the [blast] tests we did with Department of State."  Pl.'s App. at 93-94.  Yet, Mr. Cardenal acknowledges that he "can't give . . . a date."  *Id.*  As the date of the instruction to perform work beyond the scope of the Contract is essential for determining accrual and genuine issues of material fact exist concerning such date, this Court denies Defendant's Motion for Summary Judgment on CCO Claim No. 6.

E.  <u>CCO Claim No. 9: Blast Validation Testing</u>

Plaintiff's CCO claim for blast validation testing (CCO Claim No. 9) also involves issues of fact that must be resolved at trial.  *See, e.g.*, *Pond Sec. Servs., GmbH*, 2021 WL 2452142, at *11.  Defendant relies entirely on Plaintiff's Complaint to establish that by September 5, 2007, Square One had knowledge of the Government's instruction regarding blast validation testing. Mot. at 28 (citing Compl. ¶ 36).  Specifically, Defendant points to the portion of Plaintiff's Complaint that references the September 5, 2007 meeting between Mr. Romanko and Square One personnel.  *Id.* (citing Compl. ¶ 36).  According to Plaintiff's Complaint, Mr. Romanko informed Square One at the meeting that the State Department would "require blast validation for the complete armor system."  Compl. ¶ 36.  However, under this Court's Rules, a complaint — which contains allegations, rather than established facts — cannot be the basis for granting a party's

---

[10] In its Reply, Defendant focuses on when Square One installed the B pillar reinforcements.  Reply at 29-31.  However, the inquiry relevant for determining accrual is when the Government made an instruction to perform work outside the scope of the Contract, and not when the work was performed.  *See supra* Discussion Section I.C.  Thus, although it may provide some insight at trial, the evidence cited by Defendant about when Plaintiff installed the B pillar reinforcements is not dispositive concerning the date of accrual.

motion for summary judgment.  *See* Rule 56(c)(1)(A).  Thus, while Plaintiff does not cite any evidence to rebut the September 5, 2007 instruction — likely because the information is acknowledged and reflected in its Complaint — the Court is still unable to grant summary judgment for Defendant based *only* on allegations contained in the Complaint.  *Id.*; Resp. at 14. Rather, Defendant must present some evidence from materials such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, [or] interrogatory answers" evincing a September 5, 2007 instruction for blast testing validation.  Rule 56(c)(1)(A).  Accordingly, this Court denies Defendant's Motion for Summary Judgment with respect to CCO Claim No. 9.

F.  CCO Claim No. 10: Level D Swing Door Glass on all SUVs

Plaintiff's CCO claim for Level D swing door glass on all SUVs (CCO Claim No. 10) is untimely.  Defendant's evidence demonstrates not only that the State Department instructed Plaintiff to install the requisite glass before October 9, 2008, but also that Square One began installing the glass that same year.  Mot. at 27.  The undisputed evidence establishes that Square One printed work orders on May 12, 2008, which included the glass at issue in CCO Claim No. 10.  *See* Def.'s App. at A250-51 (work order).  Thus, assuming for the sake of this Motion that the work underlying CCO Claim No. 10 was beyond the scope of the Contract, Defendant instructed Plaintiff to perform such work before Square One printed those work orders on May 12, 2008. Accordingly, Plaintiff's CCO Claim No. 10 was untimely filed.

Plaintiff does not cite any evidence, much less material evidence, placing these facts in dispute.  Resp. at 14-15.  This is unsurprising, as Plaintiff acknowledges the evidence in its Complaint, which alleges the Government requested Level D glass during the September 5, 2007, meeting between Mr. Romanko and Square One personnel.  Compl. ¶ 35 ("The [September 5, 2007] meeting notes taken by Square One's Program Manager Julio Cardenal became the

additional out of scope work requested by the DOS and performed by Square one to incorporate the changes into the vehicles are detailed in . . . CCO 010.").  Plaintiff's Complaint acknowledges that Square One "started buying and installing Level D swing doors on all SUVs as of [November] 2007."  Compl. at 55.  Despite this, Plaintiff contends, without reference to any evidence, that CCO Claim No. 10 was timely submitted because Plaintiff could not have known on October 9, 2008, "how many vehicles this requirement would affect, or what the cost of labor and materials would be."  *Id.* at 15.  Again, this contention, based on attorney argument alone, concerns the final costs or damages that may have been incurred by or owed to Plaintiff rather than the accrual date.  *See supra* Discussion Section I.A-B; *Ferring B.V.*, 437 F.3d at 1193 (unsupported attorney argument insufficient to overcome motion for summary judgment).  Plaintiff was clearly on notice on September 5, 2007 that it would need to implement Level D swing door glass on "[a]ll vehicles armored under [the] [C]ontract."  Compl. at 55.  Thus, the claim accrued at that time — far before October 9, 2008— making Plaintiff's claim untimely.  Accordingly, this Court grants Defendant's Motion for Summary Judgment on CCO Claim No. 10.

G.  CCO Claim No. 11: Replacement of OEM Door Handles on Large Sedans (Cadillacs)

Plaintiff's CCO claim for replacement of original equipment manufacturer (OEM) door handles on large sedans (Cadillacs) (CCO Claim No. 11) is untimely.  Defendant presents undisputed evidence reflecting that Square One had knowledge of the Government's request for OEM door handles on Cadillacs prior to October 9, 2008.  Mot. at 28; Def.'s App. at A202-05.  Specifically, Defendant references Square One manager Mr. Julio Cardenal's deposition, during which he testified that by April 2008 the State Department had directed Square One to replace the door handles on the Cadillacs.  Def.'s App. at A202-205; *see* Mot. at 28.

Plaintiff fails to cite any evidence contesting Mr. Cardenal's sworn testimony, and instead merely argues in briefing that Square One could not have known before October 9, 2008 how many

vehicles would require OEM door handles because it was not a contractual requirement. Resp. at 15. First, as noted, attorney argument alone is insufficient to create a genuine dispute of material fact. *See Ferring B.V.*, 437 F.3d at 1193. Second, as previously explained, accrual of a CCO claim occurs when a contractor is instructed by the Government to perform work outside the scope of the contract. *See supra* Discussion Section I.C. That the OEM door handle requirement was allegedly not specified in the Contract does not impact the claim's accrual date. *See supra* p.8 n.10. Indeed, while the number of vehicles ultimately requiring OEM door handles may have impacted Plaintiff's total costs or damages, it does not change the date by which Plaintiff knew about Defendant's request for door handles — April 2008.[11] *See supra* Discussion Section I.A-B; Def.'s App. at A202-205. As the accrual date for this CCO claim occurred before October 9, 2008, this Court grants Defendant's Motion for Summary Judgment on CCO Claim No. 11.

H.  CCO Claim No. 12: Map Lights (Cadillacs)

Finally, Plaintiff's CCO claim for Map Lights (Cadillacs) (CCO Claim No. 12) is untimely. The undisputed evidence reflects that Square One had knowledge of the Government's request for map lights on Cadillacs prior to October 9, 2008. Def.'s App. at A182, 194; Mot. at 29. Defendant again references Mr. Julio Cardenal's deposition testimony, in which he acknowledged that the State Department requested the installation of the map lights at issue in CCO Claim No. 12 at "the beginning of production of this [C]ontract." *Id.* (citing Def.'s App. at A194). To that end, Square One printed a work order for armoring a Cadillac on March 7, 2008. Def.'s App. at A182. Thus,

---

[11] At oral argument, Plaintiff argued that the door handles "weren't installed until after blast testing," and the claim, therefore, did not begin to accrue until after the tests had been completed. Tr. at 121:7-9. Yet, as previously explained, the standard for accrual of a CCO claim is not *performance* of the new requirement (*i.e.*, installing the new handles), but rather when the *instruction* was made for the new requirement beyond the scope of the contract. *See supra* Discussion Section I.C.

based on the undisputed evidence Defendant presents, the Government's request for installation of map lights in certain armored vehicles occurred by March 7, 2008.

Plaintiff does not cite any evidence, material or otherwise, contesting these facts and merely argues again (as it did for CCO Claim No. 11) that it could not have known how many vehicles would require map lights before October 9, 2008 because installation of such map lights was not a contractual requirement.  Resp. at 15.  As noted, the number of vehicles would impact Plaintiff's potential costs or damages rather than the accrual date.  *See supra* Discussion Section I.A-B, II.G.  Accordingly, this Court grants Defendant's Motion for Summary Judgment on CCO Claim No. 12.

<u>CONCLUSION</u>

For the reasons set forth above, Defendant's Motion for Partial Summary Judgment Based Upon the Statute of Limitations (ECF No. 208) is **GRANTED** with respect to CCO Claim Nos. 2, 3, 4, 10, 11, and 12 and **DENIED** with respect to CCO Claim Nos. 6 and 9.

IT IS SO ORDERED.

*Eleni M. Roumel*
ELENI M. ROUMEL
Judge

September 22, 2022
Washington, D.C.