# In the United States Court of Federal Claims

|  |  |
|---|---|
| SQUARE ONE ARMORING SERVICES COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | Nos. 16-cv-0124; 16-cv-0263; 21-cv-2002<br><br>Filed: September 22, 2022 |

*David J. Habib, Jr.*, Law Office of David J. Habib, Westlake Village, California for Plaintiff.

*James W. Poirier*, United States Department of Justice, Civil Division, Commercial Litigation, Washington, District of Columbia for Defendant.  With him on the briefs are *Brian M. Boynton*, Principal Deputy Assistant Attorney General, Civil Division; *Patricia M. McCarthy*, Director, Commercial Litigation Branch; *Franklin E. White*, *Jr.*, Assistant Director, Commercial Litigation Branch; and *Daniel A. Hoffman*, Trial Attorney, Commercial Litigation Branch.

## **MEMORANDUM AND ORDER**

On October 12, 2021, during the pendency of this litigation, Plaintiff Square One Armoring Services Company (Plaintiff or Square One) filed a new action in the U.S. Court of Federal Claims appealing a 2020 final decision of a United States Department of State (State Department or agency) Contracting Officer that held Defendant United States (Defendant or Government) was entitled to reimbursement for overpayments to Plaintiff.  *Square One Armoring Servs. Co. v. United States*, 21-cv-2002 at Complaint (ECF No. 1).  After the 2021 case was consolidated with the two 2016 cases already pending in this action, this Court granted the parties' Unopposed Motion for Leave to File Defendant's Third Amended Answer Alleging Third Counterclaim (ECF No. 202).  *Id.* at ECF No. 9; ECF No. 203.  Defendant subsequently filed its Third Amended

Answer to Plaintiff's Third Amended Complaint, and Defendant's Counterclaims and Affirmative Defenses on January 29, 2022.  (ECF No. 204) (Third Am. Answer).

In its third counterclaim for mistake of fact (Mistake of Fact Counterclaim), Defendant alleges that the Government mistakenly overpaid Plaintiff $242,366.48 based on "eight (8) invoices submitted by Square One which are identified in the [C]ontracting [O]fficer's final decision." *Id.* ¶ 116.  Defendant seeks repayment of those mistaken invoices plus interest pursuant to 31 U.S.C. § 3717, and FAR 32.614, 32.617, and 52.232-17.  *Id.* ¶ 117.

Defendant now moves for summary judgment on its Mistake of Fact Counterclaim.  *See* Defendant's Motion for Partial Summary Judgment on Counterclaim Three, Mistake of Fact Payments (ECF No. 219) (Mot.).  The parties completed briefing on Defendant's motion on June 10, 2022, and this Court held oral argument on July 29, 2022.  *See* Plaintiff's Response to Defendant's Motion for Partial Summary Judgment on Counterclaim Three, Mistake of Fact Payments (ECF No. 223) (Resp.); Defendant's Reply in Support of Its Motion for Partial Summary Judgment on Counterclaim Three, Mistake of Fact Payments (ECF No. 227) (Reply); Transcript of Oral Argument, dated July 29, 2022 (ECF No. 231) (Tr.).

Consistent with its Mistake of Fact Counterclaim, Defendant's Motion for Partial Summary Judgment demands $242,366.48, plus interest and penalties, for alleged mistaken overpayments made by the Government to Square One for the noted eight armoring jobs performed in 2008. Mot. at 4-6.[1]  As neither party contests the amount of the overpayment at issue or that the Government overpaid Plaintiff for these eight armoring jobs, the only issues pending before the Court are (i) whether Defendant timely raised its Mistake of Fact Counterclaim; if so, (ii) whether

---

[1] Citations throughout this Memorandum and Order refer to the ECF-assigned page numbers, which do not always correspond to the pagination within the document.

the alleged overpayments were intentional (as Plaintiff contends) or mistaken (as Defendant contends); and, if mistaken, (iii) whether Defendant has already received credit on other jobs and invoices for these overpayments, as Plaintiff maintains. *See* Tr. at 64:9-17 (Plaintiff acknowledges it is not contesting overpayments); *compare* Mot. at 14, *with* Resp. at 6. The Court must also address Defendant's requested interest and penalties. For the reasons described below, this Court holds that (i) Defendant timely raised its Mistake of Fact Counterclaim, (ii) Defendant mistakenly overpaid Plaintiff, and (iii) Plaintiff has not credited Defendant for such overpayments. The Court also holds that Defendant is entitled to interest and penalties on the overpayment amount, but not to the extent it requests. Accordingly, this Court **GRANTS IN PART** Defendant's Motion for Partial Summary Judgment on Counterclaim Three, Mistake of Fact Payments (ECF No. 219).

BACKGROUND

This action has a lengthy litigation history, familiarity with which is presumed. *See, e.g.*, *Square One Armoring Servs. Co. v. United States*, 152 Fed. Cl. 536 (2021). A background summary pertinent to the current motion follows.

Plaintiff armored vehicles for the State Department under two contracts — a 1999 Federal Supply Schedule (FSS) contract with the General Service Administration (GSA) and a 2007 indefinite delivery/indefinite quantity (IDIQ) contract. *See* Appendix to Defendant's Motion and Reply in Support of Partial Summary Judgment on Counterclaim Three, Mistake of Fact Payments (ECF No. 227-1) (Def.'s App.) at B175-189 (1999 contract), B29-101 (2007 contract). Consistent with the nomenclature adopted by the parties, this Court references the 1999 FSS contract as the "Old Contract" and the 2007 IDIQ contract as the "New Contract." *See generally* Mot.; Resp.

The Old Contract and New Contract have different design specifications and compensation structures.[2]   *Compare* Def.'s App. at B175-189 (Old Contract), *with id.* at B29-101 (New Contract).   The parties agreed that Defendant would pay Plaintiff $50,940 for armoring jobs completed under the Old Contract's specifications.   *Id.* at B2 (Contracting Officer's decision explaining pricing for armoring jobs performed under Old Contract and New Contract).   Armoring jobs completed per the New Contract's specifications would be compensated at $80,114.21 or $82,357.41.   *Id.*  It is undisputed that for all eight armoring jobs[3] at issue, Defendant paid Plaintiff the New Contract rates for jobs performed under Old Contract specifications, as reflected in the following chart contained in Plaintiff's motion:

| Job | Invoice | Contract Price | Payment Amount | Overage |
|---|---|---|---|---|
| 438 | 2753-A | $    50,940.00 | $       82,357.41 | $       31,417.41 |
| 439 | 2754-A | $    50,940.00 | $       82,357.41 | $       31,417.41 |
| 440 | 2755-A | $    50,940.00 | $       82,357.41 | $       31,417.41 |
| 441 | 2750-A | $    50,940.00 | $       82,357.41 | $       31,417.41 |
| 67TL**571** | 2685 | $    50,940.00 | $       80,114.21 | $       29,174.21 |
| 67TL**736** | 2738 | $    50,940.00 | $       80,114.21 | $       29,174.21 |
| 67TL**737** | 2739 | $    50,940.00 | $       80,114.21 | $       29,174.21 |
| 67TL**738** | 2805 | $    50,940.00 | $       80,114.21 | $       29,174.21 |
| | | | **Total:** | $      242,366.48 |

*See* Mot. at 14 (bolding in original); Tr. at 64:9-17.

Of relevance here, the New Contract specifies that while the agency's Contracting Officer Representatives (COR) can oversee day-to-day contract management, only the Contracting Officer may authorize changes to "the specifications, terms, and conditions" of the contract.  Def.'s App. at B32, B80-81.  Several Contracting Officers oversaw the contract, including Messrs. Haines and

---

[2] The armoring jobs under both contracts involved armoring Government vehicles to certain standards and specifications — based on the respective contract requirements — for use by U.S. military personnel and dignitaries.  *Square One Armoring Servs. Co.*, 152 Fed. Cl. at 540.

[3] The armoring jobs have the following order numbers:  438, 439, 440, 441, 571, 736, 737, and 738.  Def.'s App. at B3; Mot. at 4.

Sanchez.  *See* Tr. at 59:5-23.  Similarly, several CORs worked on this contract, including Messrs. Kevin Lehman and Rick Motley.  *See* Appendix to Plaintiff's Response to Defendant's Motion for Partial Summary Judgment on Counterclaim Three, Mistake of Fact Payments (ECF No. 223-1) (Pl.'s App.) at PB 126.  During the years at issue, Plaintiff alleges that COR Rick Motley approved the eight overpayments referenced in Defendant's motion to remedy the Government's "financial management and payment processing errors."  Resp. at 6.

Perhaps unexpectedly, on October 13, 2020, more than a decade after the submission and payment of the eight invoices at issue, a State Department Office of Acquisitions Management Contracting Officer issued a final decision concerning the eight armoring jobs at issue.  *See* Def.'s App. at B1-4 (decision of State Department Contracting Officer).  The Contracting Officer determined that the overpayments were mistaken and that "the Government is entitled to reimbursement by Square One of the full amount paid by mistake: $242,366.48."  *Id.* at B3. Plaintiff appealed the decision of the Contracting Officer by filing suit at the U.S. Court of Federal Claims.  *Square One Armoring Servs. Co. v. United States*, 21-cv-2002 at Complaint (ECF No. 1). On consent of the parties, this Court consolidated the 2021 action with the other two 2016 cases already pending before this Court.  *Id.* at ECF No. 9; ECF No. 198 at 2 (noting consent of the parties).

## APPLICABLE LEGAL STANDARD

A court may grant summary judgment if the pleadings, affidavits, and evidentiary materials filed in a case reveal that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" as to a particular "claim or defense."  Rules of the United States Court of Federal Claims (RCFC or Rule(s)) 56(a).  The moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact.  *See Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986).  A genuine factual dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A party seeking to establish a genuine dispute of material fact must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials."  Rule 56(c)(1)(A).

While "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion," summary judgment may still be granted when the party opposing the motion submits evidence that "is merely colorable . . . or is not significantly probative."  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Anderson*, 477 U.S. at 249 (internal citation omitted).  Summary judgment is appropriate when "the only disputed issues [are] issues of law."  *Dana Corp. v. United States*, 174 F.3d 1344, 1347 (Fed. Cir. 1999).  The court may only grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

<u>DISCUSSION</u>

Defendant contends that it is entitled to summary judgment on its Mistake of Fact Counterclaim because (1) it "has inherent authority to recover sums erroneously paid," and (2) "there is no genuine dispute about whether [the State Department] paid new contract prices for GSA contract work."  Mot. at 13-14.  Further, Defendant asserts that it "is entitled to interest and a 6% per annum penalty on the Contracting Officer's October 13, 2020, final decision demanding $242,366.48."  *Id.*

6

Plaintiff does not dispute that the Government paid Square One New Contract prices (approximately $80,000-$82,000) for armoring jobs performed to Old Contract specifications (priced at approximately $50,000). *Id.* at 14; *see also* Tr. at 64:9-17 ("THE COURT: But generally, you acknowledge that Square One was paid, I'll call it the new contract rate, for the old contracting armoring job[?] . . . [PLAINTIFF'S COUNSEL:] We admit that that's the case."). Rather, Plaintiff contends that summary judgment on Defendant's Mistake of Fact Counterclaim is unwarranted because (1) the counterclaim is barred by the statute of limitations, (2) even if the counterclaim was timely raised, Defendants intentionally, rather than mistakenly, made the overpayments "to remedy [the Government's] financial management and payment processing errors," and (3) Defendant "suffered no loss," as Plaintiff has already reimbursed the Government for these overpayments via payment credits on other jobs. Resp. at 6, 15-18; *see also* Tr. at 64:11-17 ("THE COURT: The only issue we're talking about here, apart from statute of limitations, is intent, whether this was intentional or whether it was a mistake[?] [PLAINTIFF'S COUNSEL:] Whether it was a mistake. Yes, Your Honor, that's the only issue."). The Court is unpersuaded by Plaintiff's arguments.

As described below, Defendant's Mistake of Fact Counterclaim is not barred by the statute of limitations. Further, no genuine issue of material fact exists disputing that (i) Defendant's overpayments were mistaken, or that (ii) Plaintiff has not repaid Defendant for these overpayments via payment credits on other jobs or otherwise. Finally, as explained further below, Defendant is entitled to penalties and interest on the overpayment amount due, though not to the extent Defendant contends it is due. Accordingly, the Court must grant Defendant's motion in part. *See Alpek Polyester, S.A. de C.V. v. Polymetrix AG*, No. 2021-1706, 2021 WL 5974163, at *5 (Fed.

Cir. Dec. 16, 2021) ("But the summary judgment standard requires a *genuine* dispute about a material fact; no such genuine dispute exists here.") (emphasis in original).

     I.    <u>Defendant Timely Asserted its Mistake of Fact Counterclaim</u>

As an initial matter, Plaintiff contends that this Court should deny Defendant's motion because Defendant failed to timely assert its Mistake of Fact Counterclaim.  Resp. at 15-18. Specifically, Plaintiff asserts that 28 U.S.C. § 2415(a) and its six-year statute of limitations bar Defendant from pleading its Mistake of Fact Counterclaim.  *See* Resp. at 15-18.  Contrary to Plaintiff's position, Defendant's Mistake of Fact Counterclaim is not barred by the statute of limitations.

Section 2415(a) states that "every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues." 28 U.S.C. § 2415(a).  However, as this Court held in its February 22, 2021 Memorandum and Order granting Defendant's Motion for Leave to File Defendant's Second Amended Answer (ECF No. 149), "28 U.S.C. § 2415(f) supplies the correct standard where a counterclaim . . . arises from the same contract that serves as the basis for plaintiff's timely complaint."[4]  *Square One Armoring Servs. Co.*, 152 Fed. Cl. at 548.  In relevant part, that subsection states:

> The provisions of this section shall not prevent the assertion, in an action against the United States or an officer or agency thereof, of any claim of the United States or an officer or agency thereof against an opposing party, a co-party, or a third party

---

[4] Plaintiff argues that applying § 2415(f) to Defendant's Mistake of Fact Counterclaim is "unreasonable and unfair" where the counterclaim "accru[ed] decades in the past, when memories often have faded and records often have been discarded."  Resp. at 15, 18.  Such arguments are unavailing, as even if "the outcome may seem unfair, it is one mandated by the text of the statute and thus can only be rectified by future amendments to the statutory text."  *Charleston Area Med. Ctr., Inc. v. United States*, 940 F.3d 1362, 1370 (Fed. Cir. 2019) (citing *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1815 (2019)).

that arises out of the transaction or occurrence that is the subject matter of the opposing party's claim.

28 U.S.C. § 2415(f).  Accordingly, while the six-year statute of limitations in Section 2415(a) applies to government claims based upon a contract, "§ 2415 expressly provides that the six-year limitation period does not prevent the government from asserting its claim as a counterclaim that arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." *Strand v. United States*, 706 F. App'x 996, 1001 (Fed. Cir. 2017).  Thus, as the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has instructed, "the six-year statute of limitations [in 28 U.S.C. § 2415(a)] does not apply to the government when it is seeking to recover improperly disbursed funds."  *S. Cal. Edison Co. v. United States*, 226 F.3d 1349, 1356 (Fed. Cir. 2000).

Defendant's Mistake of Fact Counterclaim clearly "arises out of the transaction or occurrence that is the subject matter of [Plaintiff's] claim."  28 U.S.C. § 2415(f).  This Court previously held that the facts pertinent to overpayment for jobs 438, 439, 440, and 441 arise from the same State Department contract that serves as the basis for Plaintiff's Third Amended Complaint (ECF No. 52), and accordingly "stem[med] from the same transaction underlying" Plaintiff's claims.  *Square One Armoring Servs. Co.*, 152 Fed. Cl. at 549.  The four invoices for jobs 571, 736, 737, and 738 also stem from the same State Department contract as jobs 438-441 and involve the same set of facts underlying Plaintiff's Third Amended Complaint – namely, the State Department Contracting Officer's 2020 decision ordering Plaintiff to reimburse the Government for overpayments.  *See Square One Armoring Servs. Co. v. United States*, 21-cv-2002 at Complaint (ECF No. 1) ¶¶ 33-37; *see* Mot. at 14-15.  Thus, these four jobs also "stem[med] from the same transaction underlying" Plaintiff's claims.  *Square One Armoring Servs. Co.*, 152 Fed. Cl. at 549.  As Defendant's Mistake of Fact Counterclaim seeks to "recover improperly disbursed funds" (*i.e.*, Defendant's undisputed overpayment of funds to Plaintiff) and arises from

the identical transactional facts as those supporting Plaintiff's claims, the counterclaim is not barred by the statute of limitations.  *See S. Cal. Edison Co.*, 226 F.3d at 1356; 28 U.S.C. § 2415(f).

      II.    <u>Defendant is Entitled to Reimbursement for its Mistaken Overpayments</u>

Turning to the parties' merits arguments, it is clear that the record before this Court "could not lead a rational trier of fact to find for the [Plaintiff]."  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citing *First Nat'l Bank of Ariz.*, 391 U.S. at 289).  As described more fully below, the following material facts are undisputed: (i) Plaintiff armored the eight vehicles at issue to the Old Contract specifications and invoiced Defendant at New Contract prices; (ii) Defendant paid Plaintiff the New Contract prices for its Old Contract armoring jobs without authorization from a State Department official with actual or apparent authority; and (iii) Plaintiff did not reimburse Defendant for those overpayments.  Plaintiff fails to cite any material evidence disputing those facts.  Accordingly, Defendant is entitled to judgment as a matter of law with respect to its Mistake of Fact Counterclaim.

      A.    <u>Defendant Established a Prima Facie Case for Mistake of Fact Overpayments</u>

"The Government by appropriate action can recover funds which its agents have wrongfully, erroneously, or illegally paid."  *United States v. Wurts*, 303 U.S. 414, 415-16 (1938).  A party may maintain a cognizable mistaken overpayments suit if it can establish that the overpayments were "erroneously or illegally made."  *Aetna Cas. & Sur. Co. v. United States*, 526 F.2d 1127, 1130 (Ct. Cl. 1975) (quoting *Fansteel Metallurgical Corp. v. United States*, 172 F. Supp. 268, 270 (Ct. Cl. 1959)).  Plaintiff acknowledges that it armored jobs 438, 439, 440, 441, 571, 736, 737, and 738 to the Old Contract specifications.  *See Def.'s App. at B102-19 (testimony of Mr. Quintana); *id.* at B10-17 (jobs 438, 439, 440, and 441 work orders); *id.* at B127-34 (jobs 571, 736, 737, and 738 work orders); Tr. at 64:9-17.  The contract price for vehicles armored to the specifications required by the Old Contract was $50,940.00.  *See Def.'s App. at B5-7 (original

invoices for jobs 438, 440, and 441); *id.* at B164-65 (GSA Purchase Order, job 438); *id.* at B166-67 (GSA Purchase Order, jobs 440 and 441).  Yet, the parties agree that the State Department paid Plaintiff for these Old Contract jobs at the higher, New Contract prices of $80,114.21 or $82,357.41.  *Id.* at B2; Tr. at 64:9-17.  This presents a prima facie case of mistaken overpayments, as Defendant has pointed to undisputed facts establishing that the Government "erroneously" paid Square One more than authorized under the contract.  *Agility Pub. Warehousing Co. v. United States*, 969 F.3d 1355, 1366 (Fed. Cir. 2020) ("[T]he United States has an independent and inherent right to recover any overpayment of U.S. Funds."); *Aetna Cas. & Sur. Co.*, 526 F.2d at 1130.

## B.  No Official with Actual Authority Authorized Overpayments to Square One

Plaintiff contends that Defendant's overpayments were not mistaken, but instead were intended "to remedy [the Government's] financial management and payment processing errors." Resp. at 6.   Specifically, Plaintiff contends State Department officials authorized such overpayments to Square One.  *Id.*  However, Plaintiff's intentional overpayment theory does not establish a genuine dispute of material fact, as it is predicated entirely on (i) unsupported assertions by counsel that "the alleged 'mistaken' payments of Plaintiff's subject invoices were not mistakes at all," and (ii) an alleged approval by Defendant's COR Rick Motley of invoices for Old Contract armoring jobs at the New Contract price, despite that Mr. Motley was not a Contracting Officer contractually authorized to make such alterations.[5]  *Id.* at 6-7, 13-15 ("Square One's 2009 invoices

---

[5] At oral argument, Plaintiff's counsel claimed for the first time that a Contracting Officer had approved purchase orders for Old Contract work paid at the New Contract price.  Tr. at 95:6-14 (referring to Pl.'s App. at PB 48[,] 21, 26, and 42); *but see id.* at 91:1-6 (stating on behalf of Defendant that the "contracting officer never knew anything about" the overpayments).  As an initial matter, Plaintiff waived this issue by omitting it from its briefing and raising it for the first time at oral argument. *See, e.g.*, *Office Depot, Inc. v. United States*, 95 Fed. Cl. 517, 530-31 (2010) ("Because plaintiff's argument was not presented to the court until oral argument, the court considers this argument waived."); *see also* Reply at 16 (arguing Plaintiff waived the argument by failing to address it in its Response and noting Plaintiff "does not allege that the contracting officer

were . . . reviewed and approved by Mr. Motley as the Contracting Officer's Representative responsible for and with authority for determining that the invoices complied with the subject contract."). Neither contention demonstrates a genuine dispute of material fact.

First, this Court will not consider counsel's unsupported assertions, as "[c]onclusory allegations and attorney arguments are insufficient to overcome a motion for summary judgment." *Ferring B.V. v. Barr Lab'ys, Inc.*, 437 F.3d 1181, 1193 (Fed. Cir. 2006) (citation omitted); *see also* Rule 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record."). Second, even assuming

---

. . . modified the 2007 contract to allow overpayments to Square One or expand Mr. Motley's authority"). Accordingly, the Court declines to consider Plaintiff's newly asserted argument.

Even if the Court were to entertain Plaintiff's new argument, which it does not, Plaintiff's argument would still fail. To support its contention that a Contracting Officer authorized the overpayments, Plaintiff's counsel referenced four documents at oral argument, all of which are immaterial and could not create a genuine dispute of material fact. First, three of the four documents referenced by Plaintiff's counsel are neither purchase orders nor invoices signed by a Contracting Officer, and thus are irrelevant here. Pl.'s App. at PB 21, 42, and 48. Second, the final document referenced by Plaintiff's counsel is a purchase order signed by a Contracting Officer authorizing New Contract work at New Contract prices. *Id.* at PB 26. That purchase order displays Old Contract job numbers handwritten on the top of the document. *Id.* at PB 26. However, this document is immaterial to whether the Contracting Officer authorized overpayments because both parties acknowledge that the handwritten job numbers were added by a Square One employee *after* the document was signed by a Contracting Officer. *See* Resp. at 12 ("As was her frequent practice in order to track which vehicles were assigned to which P.O.'s, Plaintiff employee Gladys Guillen made handwritten notes of which VINs and/or Job Numbers were assigned to which P.O."); Tr. at 89:14-23 ("Square One ha[d] written the job numbers at the top of the page," and the "contracting officer [would have] had no knowledge" that he was approving New Contract payments for Old Contract work at the time he signed the purchase order.). Indeed, Plaintiff concedes that there is nothing in the record evincing a *Contracting Officer's* approval of overpayments for Square One's armoring jobs. Tr. at 62:8-25 ("[T]o my knowledge, there is nothing that explicitly says, gee, I [as a Contracting Officer] know that you're paying $80,000 for these $50,000 vehicles, and I know why. There's nothing like that."). Accordingly, Plaintiff's cited "evidence," if considered, would still fail to establish that a Contracting Officer knowingly authorized overpayments or raise a genuine dispute about the mistaken nature of Defendant's overpayments.

Mr. Motley approved the overpayments as Plaintiff contends, such approval is irrelevant because Mr. Motley, as a COR, lacked actual authority under the terms of the New Contract to authorize new payment (or overpayment) for jobs built to Old Contract specifications.

"With respect to contracts for supplies and services, the federal government has given the authority to enter into and modify contracts to only a limited class of government employees: contracting officers." *Winter v. Cath-dr/Balti Joint Venture*, 497 F.3d 1339, 1344 (Fed. Cir. 2007) (citing 48 C.F.R. § 1.601(a)). The Contracting Officer may, when authorized, "delegate some of its authority to certain designated representatives." *Id.* While authority may be express or implied, "authority cannot be implied in contravention of express contract language." *S & M Mgmt. Inc. v. United States*, 82 Fed. Cl. 240, 247 (2008) (citing *Winter*, 497 F.3d at 1344). Thus, if the terms of the contract directly address authority, those contractual terms govern. *Id.*

The terms of the New Contract are "clear and unambiguous" — only a Contracting Officer could change the terms of the contract or authorize new payments. *See Barron Bancshares, Inc. v. United States*, 366 F.3d 1360, 1375 (Fed. Cir. 2004) (explaining that courts must give contractual terms their plain meaning when "the terms of a contract are clear and unambiguous"). The "Nonpayment for Unauthorized Work" clause of the New Contract specifies that "[o]nly a duly appointed Contracting Officer is authorized to change the specifications, terms, and conditions of this contract." Def.'s App. at B81. Furthermore, the New Contract's "Placement of Orders" clause states that the "Contracting Officer is the *only* person authorized to place" orders under the contract. *Id.* at B32 (emphasis added). While the "Contracting Officer's Representative" clause permits the Contracting Officer to "designate in writing one or more Government employees, by name and position title, to take action for the Contracting Officer," that clause goes on to bar such designees from altering the contract's terms or conditions unless that designee "is a warranted

Contracting Officer and this authority is delegated in the designation." *Id.* at B80.  There is no evidence in the record even suggesting that a Contracting Officer made such a delegation of authority to Mr. Motley, the COR whom Plaintiff contends approved the payment scheme.

It is undisputed that Mr. Motley — like the other CORs — is not a Contracting Officer as defined by the New Contract.  Tr. at 56:23-25 ("[PLAINTIFF'S COUNSEL:] [Mr. Motley] was not the contracting officer.").  As noted, Plaintiff has not provided any evidence even suggesting that Mr. Motley or any other COR received written authorization to make decisions on a Contracting Officer's behalf.  *See* Tr. at 62:19-23 (acknowledging Contracting Officer did not approve COR making overpayments); *see generally* Resp.  Indeed, Plaintiff never argues that the Contracting Officer delegated his authority by designation to Mr. Motley as specified in the New Contract, likely because no such designation of authority exists in the record.  Def.'s App. at B80 ("Contracting Officer Representative" clause of New Contract); *see generally id.*  Accordingly, the evidence Plaintiff cites does not create a factual dispute regarding whether the Government authorized the overpayments.[6]  *See* Resp. at 6.

### C.  No Official with Apparent Authority Authorized Overpayments to Square One

Plaintiff also argues that Mr. Motley acted with apparent authority to authorize overpayments as a result of his responsibility for the day-to-day communications with Square One concerning the armoring jobs at issue.[7]  *See* Tr. at 55:17-19 ("[W]e think that [apparent authority

---

[6] Plaintiff's briefing and exhibits were similarly devoid of material evidence demonstrating that State Department financial management specialist, Mr. Robert Weaver, had actual authority to approve overpayments to Square One.  *See generally* Resp.

[7] Apparent authority is "the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons."  Restatement (Second) of Agency § 8 (1957).

is] an issue here."); *id.* at 56:6-7 ("The de facto situation was Mr. Motley was the point person

running the entire program."); *id.* at 64:19-20 ("And we emphasize that the paper trail shows Mr.

Motley instructing us to [submit invoices at the New Contract rate], okay?"); *id.* at 69:13 ("We

followed the instructions we were given [from Mr. Motley]."). However, it is well-established

that "apparent authority will not suffice to hold the government bound by the acts of its agents."

*H. Landau & Co. v. United States*, 886 F.2d 322, 324 (Fed. Cir. 1989); *see also Liberty*

*Ammunition, Inc. v. United States*, 835 F.3d 1388, 1401 (Fed. Cir. 2016) ("[T]he Government is

immune to actions of its agents who merely possess apparent authority."); *Hawkins & Powers*

*Aviation, Inc. v. United States*, 46 Fed. Cl. 238, 246 (2000) ("[T]he doctrine of apparent authority

does not apply to contracts with the government."). Likewise, in government contracts cases,

"apparent authority of the government's agent to modify the contract is not sufficient; an agent

must have actual authority to bind the government." *Winter*, 497 F.3d at 1344. As previously

explained, Mr. Motley lacked actual authority to authorize overpayments under the New Contract.[8]

Thus, any instructions he may have given regarding the overpayment scheme cannot, as a matter

of law, bind the Government. *Id.*; *H. Landau & Co.*, 886 F.2d at 324.

D.  Plaintiff Has Not Reimbursed or Credited Defendant for Overpayments

Plaintiff next argues that even if Defendant's overpayments were mistaken, Defendant is

still not entitled to summary judgment because Square One credited those overpayments to the

Government on other armoring jobs. Resp. at 6. To support its theory, Plaintiff generally

references, without specific citation or explanation of relevance, to "140 pages of documents" that,

---

[8] Square One also cannot claim ignorance that Mr. Motley lacked actual authority to expand the
terms of the contract, as "anyone entering into an arrangement with the Government takes the risk
of having accurately ascertained that he who purports to act for the Government stays within the
bounds of his authority." *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947).

it contends, "evidence such credits." *Id.* (citing Pl.'s App. at PB 145-285).  Plaintiff solely relies

on these documents to support its contention that it reimbursed Defendant for the overpayments.

Indeed, Plaintiff fails to cite any witness testimony — either through a deposition, affidavit, or

declaration — that would further support its theory. *See id.*; Tr. at 78:23-79:16 (acknowledging

that Plaintiff's payment credit theory is not supported by witness testimony presented in this

motion).

      After close review of the parties' briefs and the record evidence, it is evident that Plaintiff

is attempting to manufacture a factual dispute via attorney argument in its motion and by reference

to self-serving documents generated by Square One.  For example, Plaintiff alleges in its Response,

without citation, that Square One credited the Government per "Defendant's instructions."  Resp.

at 8.  Plaintiff failed to support that statement, however, through documents, affidavits, or witness

testimony.  *Id.*  It is well-established that unsupported attorney arguments, such as this one, are not

evidence in a case and cannot create a genuine dispute of material fact.  *Ferring B.V.*, 437 F.3d at

1193.

      While Plaintiff presents documents purportedly reflecting the alleged reimbursements,

such documents do not create a genuine dispute of material fact; merely inserting 140 pages into

the record, without any explanation of their relevance, and where a connection is not obvious,

cannot create a genuine dispute.  *Traxcell Techs., LLC v. Sprint Commc'ns Co.*, 15 F.4th 1121,

1135 (Fed. Cir. 2021) (holding no genuine dispute of material fact where plaintiff "cite[d] to

lengthy documents without specifying the specific portions of those documents that were relevant

and without explaining how those documents actually showed" what plaintiff alleged).  These

documents appear to consist of invoices and purchase orders for armoring jobs performed by

Square One, email correspondence between Square One and State Department employees

regarding these orders and payments, vehicle inspection checklists, screenshots of CarMax pricing for vehicles, Government ledgers tracking pricing for goods bought and services provided, and handwritten notes by unidentified individuals.  Pl.'s App. at PB 145-285.  Plaintiff fails to establish how these documents could lead a rational trier of fact to find Square One credited the Government for its overpayments as (i) these documents do not appear on their face to demonstrate payment credits to the Government for such overpayments, (ii) Plaintiff's Response does not direct the Court to specific portions of these documents supporting that such payment credits exist, and (iii) Plaintiff provides no testimony explaining how these documents support its theory.  Thus, even viewing these documents in the light most favorable to Plaintiff, they do not "raise an issue of fact that precludes summary judgment" for Defendant.  *Delaware Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC*, 597 F.3d 1374, 1383 (Fed. Cir. 2010).

Plaintiff also points to a spreadsheet, which Plaintiff acknowledges was created by Square One's accounting manager Mr. Carlos Hurtado, that purports to document that Plaintiff credited tens of thousands of dollars to the Government to offset the inflated price the Government paid for the eight jobs at issue.[9]  Tr. at 80:15-22 (acknowledging on behalf of Plaintiff that Mr. Hurtado created the "credit sheet"); Pl.'s App. at PB-145 (Square One spreadsheet allegedly reflecting Plaintiff's payment credits).  This self-generated spreadsheet cannot establish a genuine issue of material fact, as it was merely created by Plaintiff; there is no evidence underlying or supporting the self-generated spreadsheet information, and there is no evidence in the record that it was shared with Defendant in any respect until the present motion practice.  Tr. at 80:15-22.  Plaintiff further

---

[9] The spreadsheet only mentions jobs 438-441.  Pl.'s App. at PB-145.  Thus, even if this Court held that the spreadsheet created a genuine dispute of material fact concerning crediting for jobs 438-441 — which it does not — Defendant would still be entitled to summary judgment on its Mistake of Fact Counterclaim concerning the remaining four jobs, 571 and 736-738.

failed to provide any witness testimony or affidavits supporting the self-generated spreadsheet's conclusion (and Plaintiff's counsel's assertion) that Square One credited the Government tens of thousands of dollars.  *See Ferring B.V.*, 437 F.3d at 1193 ("Conclusory allegations . . . are insufficient to overcome a motion for summary judgment."); Pl.'s App. at PB-145 (spreadsheet omitting any citations to witness testimony or affidavits).  Further, as the spreadsheet was created by an employee of Square One, it clearly falls under the umbrella of "'self-serving' documents, [that] are generally insufficient to establish the existence of a genuine issue of material fact at summary judgment." *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 812 (Fed. Cir. 1999) (quoting *Nieves v. Univ. of Puerto Rico*, 7 F.3d 270, 276 n.9 (1st Cir. 1993)).  Thus, there is no genuine dispute of material fact concerning (i) the Government's mistaken overpayment to Plaintiff for armored vehicles built to Old Contract specifications, (ii) the amount of Defendant's mistaken overpayment, and (iii) Plaintiff's lack of reimbursement to Defendant via payment credit or otherwise, notwithstanding Plaintiff's unsupported, self-serving allegations to the contrary.

### III.   Defendant Is Entitled to Interest and Penalties

Defendant is entitled to interest and penalties on its Mistake of Fact Counterclaim.  As an initial matter, Plaintiff waived any arguments on these issues by failing to respond to Defendant's position in its Response.  *Sarro & Assocs., Inc. v. United States*, 152 Fed. Cl. 44, 58-59 (2021) ("A party's failure to raise an argument in an opening or responsive brief constitutes waiver."); *Cap Exp., LLC v. Zinus, Inc.*, 722 F. App'x 1004, 1009 (Fed. Cir. 2018) (finding failure to respond in an opposition brief to an argument raised in an opening brief may constitute waiver); Tr. at 84:8-9 ("[PLAINTIFF'S COUNSEL:] The interest was not addressed in the brief, Your Honor.  It wasn't."); Mot. at 14-15; *see generally* Resp. (omitting a response to Defendant's interest and penalties argument).

Second, Defendant's request for interest and penalties is consistent with applicable law. Indeed, 31 U.S.C. § 3717(a)(1) mandates that "[t]he head of an executive . . . agency shall charge a minimum annual rate of interest on an outstanding debt on a United States Government claim . . . ." 31 U.S.C. § 3717(a)(1). The parties agree the State Department Contracting Officer's final decision requesting Square One pay $242,366.48 for mistaken overpayments constitutes the "Government claim." Mot. at 15; *Square One Armoring Servs. Co. v. United States*, 21-cv-2002 at Complaint (ECF No. 1) ¶ 33 (referencing the Contracting Officer's final decision as a "claim against [P]laintiff"); Def.'s App. at B1-B4 (Contracting Officer's October 13, 2020 final decision). As "shall" is a mandatory term, the statute requires the Government to charge interest in this situation. *See Gilda Indus., Inc. v. United States*, 622 F.3d 1358, 1364 (Fed. Cir. 2010) ("When a statute directs that a certain consequence "shall" follow from specified contingencies, the provision is mandatory and leaves no room for discretion.").

Notwithstanding Plaintiff's waiver of this issue, both parties agree that if Defendant is entitled to interest, that interest began accruing on October 13, 2020, the date the Contracting Officer notified Square One of its final decision and request for repayment. Def.'s App. at B1-4, B174 (October 13, 2020 email from the State Department to Square One enclosing Contracting Officer's final decision issued that same day); *see also* Mot. at 15 ("The 2020 minimum annual interest rate of 2.00% began accruing on the $242,366.48 owed as of October 13, 2020."); Tr. at 83:23-84:3 ("[PLAINTIFF'S COUNSEL:] I believe that if the Court decides that the Government is entitled to money back, I don't believe they're entitled to interest from the date of the invoice, they're entitled to interest from the date of the CO's decision."). This Court agrees. The parties' position is consistent with 31 U.S.C. § 3717(b), which calculates accrual of interest from the date that "notice of the amount due is first mailed to the debtor." 31 U.S.C. § 3717(b)(2). As the

Contracting Officer's request for repayment was emailed to Square One on October 13, 2020, interest began accruing on that date.  *See id.*; Def.'s App. at B174.

Concerning the amount of interest owed, 31 U.S.C. § 3717(a) specifies that the interest rate must be a "minimum annual rate . . . equal to the average investment rate for the Treasury tax and loan accounts for the 12-month period ending on September 30 of each year, rounded to the nearest whole percentage point."  31 U.S.C. § 3717(a).  As the interest rate is based on an October 13, 2020 accrual date, the U.S. Department of the Treasury's 2.00% rate for 2020 applies.[10]  31 U.S.C. § 3717(c)(1).  That 2.00% rate "remains fixed . . . for the duration of the indebtedness."[11]  31 U.S.C. § 3717(c)(2).

Defendant is also entitled to penalties under 31 U.S.C. § 3717(e).[12]  *See* 31 U.S.C. § 3717(e) ("The head of an executive . . . agency shall assess on a claim . . . (1) a charge to cover the cost of processing and handling a delinquent claim; and (2) a penalty charge of not more than 6 percent a year for failure to pay a part of a debt more than 90 days past due.").  Under § 3717(e), Plaintiff must reimburse the Government for (1) "the cost of processing and handling a delinquent claim," and (2) "a penalty charge of not more than 6 percent a year for failure to pay a part of a debt more than 90 days past due."  *Id.*  As the October 13, 2020 debt is clearly "more than 90 days past due," consistent with § 3717(e), the Court grants in part Defendant's Motion for Partial Summary

---

[10] *Current Value of Funds Rate*, Bureau of the Fiscal Service (Nov. 30, 2021), https://fiscal.treasury.gov/reports-statements/cvfr/ (last visited Sept. 14, 2022).

[11] Defendant's references to the 2021 and 2022 rates are accordingly irrelevant.  Mot. at 15.

[12] As with the interest, Plaintiff similarly waived the issue of penalties by failing to address it in its Response.  *Sarro & Assocs., Inc.*, 152 Fed. Cl. at 58-59 (2021); Mot. at 14-15; *see generally* Resp. (omitting a response to Defendant's penalties argument).

Judgment concerning penalties insofar as the penalties do not exceed 6% annually as mandated by the statute.[13]  31 U.S.C. § 3717(e).

<u>CONCLUSION</u>

For the reasons set forth above, Defendant's Motion for Partial Summary Judgment on Counterclaim Three, Mistake of Fact Payments (ECF No. 219) is **GRANTED IN PART**.  As Defendant acknowledges that its common law fraud counterclaim cannot proceed if the Court grants the present motion — since both counterclaims seek identical damages — Defendant's common law fraud counterclaim (ECF No. 204 at ¶¶ 66-110) is sua sponte **DISMISSED as MOOT**.  Tr. at 17:1-7 ("[DEFENDANT'S COUNSEL:] I would just point out that the common law fraud claim damages are the same as the damages that are sought for mistake of fact for that second four.  So if -- on a summary judgment motion, based on mistake of fact, then we no longer will have a counterclaim for a common law fraud.").

The parties are directed to **FILE** a Joint Status Report within 14 days providing a final calculation of interest and penalties owed to the Government through the date of this Memorandum and Order.

IT IS SO ORDERED.

*Eleni M. Roumel*
ELENI M. ROUMEL
Judge

September 22, 2022
Washington, D.C.

---

[13] Defendant's request for "at least an additional nine percent in annual penalties" is inconsistent with the 6 percent cap mandated by 31 U.S.C. § 3717(e).  Mot. at 15; 31 U.S.C. § 3717(e).  It is possible Defendant's request for 9% in annual penalties is a typographical error, as the header of the interest and penalties section of its motion states that the Government is "entitled to . . . a 6% annum penalty."  *Compare* Mot. at 14, *with id.* at 15.